IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

DANA GOAD, Individually and         §
a/n/f K.G., a Minor,                §
                                    §
            Plaintiff,              §
                                    §
v.                                  §        CIVIL ACTION NO. H-06-0718
                                    §
JESS LANIER and HERVEY              §
VACLAVIK, Individually and          §
as Principal of Royal Middle        §
School; and ROYAL INDEPENDENT       §
SCHOOL DISTRICT,                    §
                                    §
            Defendants.             §

## MEMORANDUM OPINION AND ORDER

Plaintiff, Dana Goad, brings this action individually and as next friend of her minor daughter, K.G., against defendants, Jess Lanier and Hervey Vaclavik, individually and as Principal of Royal Middle School, and the Royal Independent School District (RISD), pursuant to 42 U.S.C. § 1983 for violation of rights guaranteed by the United States Constitution, for violation of Title IX, 20 U.S.C. § 1681, and for negligence, gross negligence, and respondeat superior in violation of state law.  Pending before the court is Defendants' Motion to Dismiss (Docket Entry No. 7) for failure to state a claim for which relief may be granted under Federal Rule of Civil Procedure 12(b)(6).  For the reasons explained below defendants' motion to dismiss plaintiff's federal law claims will be granted, plaintiff's request to amend her complaint will be

granted, and the court will defer consideration of whether to exercise supplemental jurisdiction over plaintiff's state law claims.

## I.  <u>Standard of Review</u>

A Rule 12(b)(6) motion to dismiss for failure to state a claim for which relief may be granted tests the formal sufficiency of the pleadings and is "appropriate when a defendant attacks the complaint because it fails to state a legally cognizable claim." <u>Ramming v. United States</u>, 281 F.3d 158, 161 (5th Cir. 2001), <u>cert. denied sub nom</u> <u>Cloud v. United States</u>, 122 S.Ct. 2665 (2002).  The court must accept the factual allegations of the complaint as true, view them in a light most favorable to the plaintiff, and draw all reasonable inferences in the plaintiff's favor.  <u>Id.</u>

> When a federal court reviews the sufficiency of a complaint, before the reception of any evidence either by affidavit or admissions, its task is necessarily a limited one.  The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.

<u>Swierkiewicz v. Sorema N.A.</u>, 122 S.Ct. 992, 997 (2002) (quoting <u>Scheuer v. Rhodes</u>, 94 S.Ct. 1683, 1686 (1974)).  "[A] court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations."  <u>Id.</u> at 998.  <u>See also</u> <u>Conley v. Gibson</u>, 78 S.Ct. 99, 102 (1957) ("[A] complaint should not be dismissed . . . unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.").

## II.  **Factual Allegations**

The claims asserted in this action arise from an alleged sexual assault of plaintiff's minor daughter, K.G., on or about March 3, 2004.  Plaintiff alleges that K.G. was a special education student at Royal Middle School.  At approximately 10:41 a.m. on the day of the assault defendant Jess Lanier, a teacher at Royal Middle School, allowed two male students and K.G. to remain in his classroom unsupervised as he left to teach another class.  At approximately 10:44 a.m. one of the two male students closed and locked the door, turned off the lights, and the two male students sexually assaulted K.G.  Plaintiff alleges that K.G. had been the victim of attempted attacks and sexual predation on more than one occasion at Royal Middle School and that the two male students who assaulted her had in the past committed or attempted to commit similar acts.  Plaintiff alleges that the assault caused substantial physical and emotional injuries to K.G., that the defendants did not make any effort to obtain medical treatment for K.G. despite the fact that she was in pain and bleeding, and that the defendants caused K.G.'s mother to incur substantial expenses for K.G.'s treatment.

## III.  **Analysis**

Defendants argue that all of plaintiff's claims should be dismissed for failure to state a claim for which relief may be granted.  Plaintiff agrees that the Title IX claims asserted

against the individual defendants, Vaclavik and Lanier, are not actionable, and that their claims for negligence and gross negligence are not actionable against RISD,[1] but argue that defendants' motion to dismiss the § 1983 claims asserted against all defendants, the negligence and gross negligence claims asserted against Vaclavik and Lanier, and the Title IX and respondeat superior claims asserted against RISD should be denied.    In addition, plaintiff "request[s] that the Court permit [her] to amend [her] Original Complaint as necessary to more fully and specifically allege facts to support the causes of action [she has] alleged."[2]

## A.    Federal Law Claims

Plaintiff asserts two federal law claims: (1) a claim for violation of K.G.'s right to substantive due process provided by the Fourteenth Amendment against all defendants pursuant to 42 U.S.C. § 1983, and (2) a claim for violation of Title IX, 20 U.S.C. § 1681, against RISD.

### 1.    Due Process Claim Asserted Pursuant to 42 U.S.C. § 1983

Section 1983 is not a source of substantive rights; it merely provides a method for vindicating federal rights conferred

---

[1]Plaintiff's Opposition to Defendants' Motion to Dismiss (Docket Entry No. 10), p. 1 n.1.

[2]Id. at pp. 15-16.

elsewhere.  Graham v. O'Connor, 109 S.Ct. 1865, 1870 (1989)
(quoting Baker v. McCollan, 99 S.Ct. 2689, 2694 & n.3 (1979)).  To
state a claim for relief in a § 1983 action plaintiff must allege
that she was "deprived of a right secured by the Constitution or
laws of the United States, and that the alleged deprivation was
committed under color of state law." American Manufacturers Mutual
Insurance Co. v. Sullivan, 119 S.Ct. 977, 985 (1999).  "The first
step in any such claim is to identify the specific constitutional
right allegedly infringed." Graham, 109 S.Ct. at 1870.  Plaintiff
alleges that the defendants violated K.G.'s substantive right to
due process guaranteed by the Fourteenth Amendment by failing to
protect her from sexual assault and by creating the danger that
caused her injuries.[3]  The Due Process Clause of the Fourteenth
Amendment provides that "[n]o State shall . . . deprive any person
of life, liberty, or property, without due process of law."
"Regardless of the theory of liability that a plaintiff is
pursuing, in order to state a viable substantive due process claim
the plaintiff must demonstrate that the state official acted with
culpability beyond mere negligence." McClendon v. City of
Columbia, 305 F.3d 314, 325 (5th Cir. 2002).  See also Daniels v.
Williams, 106 S.Ct. 662, 663 (1986) ("the Due Process Clause is
simply not implicated by a negligent act of an official causing
unintended loss or injury to life, liberty, or property").

---

[3]Plaintiff's Original Complaint, Docket Entry No. 3, pp. 3-4,
¶¶ 10-13.

-5-

(a)   Individual Defendants

The individual defendants, Lanier and Vaclavik, are government officials who may be sued in their official and/or their individual capacities.   Hafer v. Melo, 112 S.Ct. 358 (1991); Kentucky v. Graham, 105 S.Ct. 3099 (1985).   Plaintiff's complaint states that Vaclavik is sued "individually and as principal of Royal Middle School," but does not state whether Lanier is sued in his official and/or individual capacity.   Since the plaintiff's "complaint must be liberally construed in favor of the plaintiff," Brown v. Nationsbank Corp., 188 F.3d 579, 585 (5th Cir. 1999), cert. denied, 120 S.Ct. 2740 (2000), the court construes plaintiff's complaint to have asserted claims against the defendants in both their official and their individual capacities.

### (1)  Official Capacity Claims

A suit against a government official in his official capacity is the same as a suit against the entity the employee represents. Graham, 105 S.Ct. at 3105.   Thus, any claims that the plaintiff is attempting to assert against the defendants in their official capacities are actually claims asserted against RISD.   Since RISD is also named as a defendant in this action, the court concludes that any claims that plaintiff is attempting to assert against the defendants in their official capacities are subject to dismissal because RISD is the real party in interest.

-6-

### (2)  Personal Capacity Claims

Asserting that plaintiff's § 1983 claims amount to nothing more than negligent supervision, defendants argue that these claims should be dismissed because in order to state a substantive due process claim the plaintiff must demonstrate that the state official acted with culpability beyond mere negligence.  Plaintiff responds that a special relationship existed between K.G. and RISD giving rise to a constitutional duty on RISD to protect her and, alternatively, that a state-created-danger theory of liability is or should be a valid cause of action under § 1983.

### (i)  Violation of Constitutional Right

#### (A)  Special Relationship

Citing <u>DeShaney v. Winnebago County Department of Social Services</u>, 109 S.Ct. 998, 1004-1005 (1989), <u>Doe v. Hillsboro Independent School District</u>, 113 F.3d 1412, 1414-1415 (5th Cir. 1997) (<u>en banc</u>), and <u>Walton v. Alexander</u>, 44 F.3d 1297, 1302-1304 (5th Cir. 1995) (<u>en banc</u>), defendants argue that "it is well-established that no constitutional duty of care and protection of students arises in the public school environment."[4]  Plaintiff argues that the facts pleaded in their Original Complaint show that "a special relationship existed which gave rise to Plaintiff's clearly established constitutional right."[5]

---

[4]Defendants' Motion to Dismiss, Docket Entry No. 7, p. 4.

[5]Plaintiff's Opposition to Defendants' Motion to Dismiss, Docket Entry No. 10, p. 10.

In her Original Complaint plaintiff alleges that K.G.

> had a clearly established constitutional right of
> reasonable care and safety at Royal Middle School.
> Defendants' affirmative action of, *inter alia*, leaving
> the classroom while two male students and one female
> student remained inside caused [K.G.], a special
> education student requiring additional attention and
> supervision, to be confined to the classroom in which she
> was attacked.   Defendants violated Plaintiff [K.G.'s]
> constitutional rights when they consciously disregarded
> their duty to follow the established policy against
> leaving such students in a classroom unsupervised.   This
> conduct constitutes deliberate indifference to the rights
> of Plaintiffs [K.G.] and Dana Goad, and entitles
> Plaintiffs to an award of their actual damages, punitive
> or exemplary damages, and an award of reasonable and
> necessary attorneys fees.[6]

Plaintiff does not cite and the court has not found any authority

recognizing a constitutional right of public school students to

protection from the actions of private parties absent the existence

of a "special relationship" between the student and the school.

See Doe v. Taylor Independent School District, 15 F.3d 443, 452 &

n.3 (5th Cir.), cert. denied sub nom Landford v. Doe, 115 S.Ct. 70

(1994).   Moreover, plaintiff's Original Complaint does not allege

either that there existed a special relationship between K.G. and

RISD that gave rise to such a constitutional right, or facts from

which such a right could reasonably be inferred.   Nevertheless,

citing Teague ex rel. C.R.T. v. Texas City Independent School

District, 348 F.Supp.2d 785, 792-793 (S.D. Tex. 2004), plaintiff

argues that their assertion that K.G. has a low I.Q. coupled with

---

[6]Plaintiff's Original Complaint, Docket Entry No. 3, p. 3 ¶ 11.

their allegations that K.G. is a minor and a special education student who suffered severe injuries on school grounds during school hours are sufficient to allege the existence of a special relationship between K.G. and RISD giving rise to a constitutional duty on the part of RISD to protect her.  Plaintiff's argument is based on DeShaney, 109 S.Ct. 998, and its progeny.

In DeShaney a small boy was repeatedly beaten by his father.  Although the county department of social services had full knowledge of the boy's abuse, it did not attempt to remove the boy from his father's custody.  When a severe beating left the boy with permanent brain damage he and his mother sued the county department of social services under 42 U.S.C. § 1983, alleging that it deprived the boy of his liberty without due process of law by failing to intervene.  On these facts the Supreme Court rejected the contention that the government owes a constitutional duty to protect people from the misdeeds of private actors:

> [N]othing in the language of the Due Process Clause itself requires the State to protect the life, liberty, and property of its citizens against invasion by private actors.  The Clause is phrased as a limitation on the State's power to act, not as a guarantee of certain minimal levels of safety and security.  It forbids the State itself to deprive individuals of life, liberty, or property without "due process of law," but its language cannot fairly be extended to impose an affirmative obligation on the State to ensure that those interests do not come to harm through other means. . . Its purpose was to protect people from the State, not to ensure that the State protected them from each other. . .
>
> Consistent with these principles, our cases have recognized that the Due Process Clauses generally confer

no affirmative right to governmental aid, even where such
aid may be necessary to secure life, liberty, or property
interests of which the government itself may not deprive
the individual. . . As a general matter, then, we
conclude that a State's failure to protect an individual
from private violence simply does not constitute a
violation of the Due Process Clause.

109 S.Ct. at 1003-1004.[7]   Nevertheless, the Court recognized an

exception   to   this   principle   for   cases   where   a   "special

relationship" exists between an individual and the state:

It is true that in certain limited circumstances the
Constitution imposes upon the State affirmative duties of
care   and   protection   with   respect   to   particular
individuals. . . [W]hen the State takes a person into its
custody   and   holds   him   there   against   his   will,   the
Constitution imposes upon it a corresponding duty to
assume some responsibility for his safety and general
well-being.

Id. at 1004-1005.

In Doe v. Taylor Independent School District, 15 F.3d 443 (5th

Cir. 1994) (en banc), the Fifth Circuit articulated a "deliberate

indifference" exception to the DeShaney principle that the state

has no affirmative duty to protect its citizens.   In Taylor a high

school biology teacher sexually assaulted a 15-year old student.

15 F.3d at 445.   The student filed a § 1983 claim against the

teacher who assaulted her, the school district, the school's

principal, and the district's superintendent, alleging that they

permitted the abuse.   The Fifth Circuit held that schoolchildren

have a substantive due process right to "bodily integrity;" that

_____

[7]"As used here the term "State" refers generically to state
and local governmental entities and their agents."   See DeShaney,
109 S.Ct. at 1003 & n.1.

physical sexual abuse by a school employee violates that right; and that school officials can be liable for failure to supervise if that failure manifests a "deliberate indifference" to the victim's constitutional rights. Id. at 445.

In Walton v. Alexander, 44 F.3d 1297 (5th Cir. 1995) (en banc), the Fifth Circuit declined to extend Doe v. Taylor ISD to include sexual abuse perpetrated by private actors. In Walton the plaintiff was a resident student at the Mississippi School for the Deaf. After another student sexually assaulted him, he complained to the superintendent who put the plaintiff and his assaulter into separate dormitories. When budget constraints forced the school to close one of its dormitories, the plaintiff and the assaulter were housed in the same building. When the assaulter attacked the plaintiff a second time, the plaintiff sued the superintendent under § 1983 for the failure to protect. Upon rehearing en banc, the Fifth Circuit held that, under DeShaney, the superintendent owed the plaintiff no duty to protect from harm inflicted by third parties. See id. at 1299. The Fifth Circuit rejected the plaintiff's argument that he had a "special relationship" with the state, holding instead that

> although . . . a very narrow class of persons who stand
> in a "special relationship" with the state enjoys a
> clearly established constitutional right to some degree
> of state protection from known threats of harm by private
> actors, this "special relationship" only arises when a
> person is involuntarily confined or otherwise restrained
> against his will pursuant to a governmental order or by
> the affirmative exercise of state power.

Id. at 1299.

In Doe v. Hillsboro Independent School District, 113 F.3d 1412 (5th Cir. 1997) (en banc), the Fifth Circuit applied the principles articulated in this line of cases to a 13 year-old student who was raped by a school janitor.  In Hillsboro the plaintiff argued that Texas' compulsory attendance laws created a special relationship between her and the school.  Upon rehearing en banc, the Fifth Circuit disagreed explaining:

> [W]e decline to hold that compulsory attendance laws alone create a special relationship giving rise to a constitutionally rooted duty of school officials to protect students from private actors. . . We join every circuit court that has considered the issue in holding that compulsory school attendance, in Texas to attend seven hours of programmed education on each school day, does not create the custodial relationship envisioned by Deshaney.  The restrictions imposed by attendance laws are not analogous to the restraints of prisons and mental institutions.

Id. at 1415.

Plaintiff's argument that a special relationship existed between K.G. and RISD is based exclusively on Teague, 348 F.Supp.2d at 792-793, a case in which the district court denied a public school district's motion to dismiss a § 1983 claim arising from the alleged sexual assault of a student with Down's Syndrome by another student in the school restroom upon concluding that a special relationship existed between the cognitively disabled student plaintiff and the school district.[8]  However, after the school

---

[8]See Plaintiff's Opposition to Defendants' Motion to Dismiss, Docket Entry No. 10, pp. 10-12.

district presented uncontradicted evidence that the plaintiff student functioned at the level of a 13-year old, the district court vacated that part of its order finding the existence of a special relationship between the plaintiff and the school district and granted the school district's motion for summary judgment.  See Teague v. Tex. City Independent School District, 386 F.Supp.2d 893, 896 & n.1 (S.D. Tex. 2005).  Citing Hillsboro the court explained that

> [t]he Fifth Circuit held that a special relationship did not exist between a school district and a thirteen-year-old student who was raped by a janitor.  See Doe v. Hillsboro Indep. Sch. Dist., 113 F.3d 1412, 1415 (5th Cir. 1997).  Therefore, to the extent that age reflects maturity and judgment, the age of thirteen—whether functional or chronological—is not enough under Fifth Circuit precedent to create a special relationship, even in conjunction with compulsory attendance laws.

Teague v. Tex. City Independent School District, 386 F.Supp.2d 893, 896 (S.D. Tex. 2005).

Although plaintiff argued that when K.G. was assaulted she was a special education student with a low IQ, plaintiff's complaint alleges only that K.G. was a special education student at a middle school; it does not allege K.G.'s chronological age, functional age, or IQ.  Even if proven to be true, the facts alleged in plaintiff's complaint are insufficient to establish the existence of a special relationship between K.G. and RISD capable of imposing upon RISD a constitutionally rooted obligation to protect K.G. from bodily harm caused by private actors.  See Walton, 44 F.3d at 1299

-13-

(state actors are only liable for the actions of a third party if there is a special relationship between the victim and the state actor); <u>Hillsboro ISD</u>, 113 F.3d at 1415 (declining to find a special relationship between a 13-year old middle school student harmed by a private actor and the defendant school district).

(B)   State Created Danger

The state-created-danger theory is not capable of saving plaintiff's § 1983 claim.  As acknowledged by the plaintiff, the Fifth Circuit has never held that the state-created-danger theory is one of the limited circumstances that rise to the level of a due process constitutional violation contemplated in <u>DeShaney</u>.  <u>See</u> <u>McClendon v. City of Columbia</u>, 305 F.3d 314, 325 (5th Cir. 2002) (en banc) (per curiam), <u>cert. denied</u>, 123 S.Ct. 1355 (2003) (replacing the panel opinion, 258 F.3d 432 (5th Cir. 2001), that adopted the state-created-danger theory).   In <u>Johnson v. Dallas Independent School District</u>, 39 F.3d 198, 201 (5th Cir. 1994), however, the Fifth Circuit explained that if such a cause of action were to be recognized, to state a claim under it, a plaintiff would have to allege that the environment created by the state actors was dangerous, the state actors knew the environment was dangerous, and the state actors used their authority to create an opportunity that would not otherwise have existed for the third party's crime to occur.  38 F.3d at 201.  <u>See also</u> <u>L.W. v. Grubbs</u>, 974 F.2d 119 (9th Cir. 1992) (assault of nurse working with known sex offender under

-14-

directive of state supervisor), <u>cert. denied</u>, 113 S.Ct. 2442 (1993); <u>Wood v. Ostrander</u>, 879 F.2d 583 (9th Cir. 1989), <u>cert. denied</u>, 111 S.Ct. 341 (1990) (woman raped when police impounded car of drunk driver leaving her in high crime area); <u>White v. Rochford</u>, 592 F.2d 381 (7th Cir. 1979) (children left by police officers alone in car after arresting driver).  The Fifth Circuit explained that

> [t]he key to the state-created danger cases . . . lies in the state actors' culpable knowledge and conduct in "affirmatively placing an individual in a position of danger, effectively stripping a person of her ability to defend herself, or cutting off potential sources of private aid." <u>Wideman v. Shallowford Community Hospital, Inc.</u>, 826 F.2d 1030, 1035 (11th Cir. 1987).  <u>See also</u> <u>L.W. v. Grubbs</u>, 974 F.2d 119, 121 (9th Cir. 1992) (state officials knowingly assigned violent, habitual sex offender to work alone with female prison employee and did not inform her of the risk).  Thus the environment created by the state actors must be dangerous; they must know it is dangerous; and, to be liable, they must have used their authority to create an opportunity that would not otherwise have existed for the third party's crime to occur.  Put otherwise, the defendants must have been at least deliberately indifferent to the plight of the plaintiff.  <u>See</u> <u>Leffall v. Dallas Independent School District</u>, 28 F.3d 521, 531 (5th Cir. 1994) (no due process claim stated against school district officials for holding a high school dance at which a student was shot and killed).

<u>Johnson</u>, 38 F.3d at 201.  Although plaintiff alleges that "[t]his is precisely the allegation in [their] Original Complaint,"[9] the court disagrees.

Plaintiff alleges that

---

[9] <u>Id.</u> at p. 13.

-15-

> [d]efendants created a danger to Plaintiff when Defendant
> teacher Jess Lanier left his classroom with two male and
> one special needs female student inside, and without
> ensuring those students were out of the room with the
> lights out and the door locked.   This conduct was
> recklessly indifferent to the safety and security of
> Plaintiff [K.G.], and directly lead to and vastly
> increased the danger to [K.G.].   The attack on [K.G.] by
> the two male students was a foreseeable cause of the
> injuries that [K.G.] and her mother Dana suffered.   This
> constitutional substantive due process violation entitles
> Plaintiffs to an award of their actual damages, punitive
> damages and reasonable and necessary attorney's fees for
> which they now sue.[10]

Plaintiff's allegations are insufficient to state a claim based on
the state-created-danger theory of liability because they allege
only that Lanier was recklessly -- not deliberately -- indifferent
to K.G.'s safety and security, and they fail to allege that Lanier
knew that by leaving K.G. and the two male students in the
unsupervised classroom that he was creating a dangerous
environment, or that he used his authority to create that dangerous
environment that would not otherwise have existed for the private
parties' crime to occur.   In other words, plaintiff's allegations
that Lanier left K.G. and two male students in an unsupervised
classroom during school hours absent any allegation that the two
male students or any other student at Royal Middle School had a
known record of having assaulted or harassed K.G. or any other
student are insufficient to trigger liability under the state-
created-danger theory because the "post hoc attribution of known

---

[10]Plaintiff's Original Complaint, Docket Entry No. 3, p. 4
¶ 13.

danger would turn inside out this limited exception to the principle of no duty." <u>Hillsboro ISD</u>, 113 F.3d at 1415 (rejecting state-created-danger theory of liability in case where student was assaulted by janitor).  <u>See also</u> <u>Rios v. City of Del Rio, Texas</u>, 444 F.3d 417, 424 (5th Cir. 2006) (allegations are insufficient to state a claim based on the state-created-danger theory of liability unless they "show specific knowledge of a harm to a known victim").

(ii)  <u>Culpability</u>

In <u>Collins v. City of Harker Heights</u>, 112 S.Ct. 1061 (1992), the Supreme Court explained that proper analysis of a § 1983 claim "requires us to separate two different issues: (1) whether plaintiff's harm was caused by a constitutional violation, and (2) if so, whether the [state actor] is responsible for that violation." <u>Id.</u> at 1066.

> Regardless of the theory of liability that a plaintiff is pursuing, in order to state a viable substantive due process claim the plaintiff must demonstrate that the state official acted with culpability beyond mere negligence.  The Supreme Court's discussions of abusive executive action have repeatedly emphasized that "only the most egregious official conduct can be said to be arbitrary in the constitutional sense." <u>County of Sacramento v. Lewis</u>, 523 U.S. 833, 846, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998) (quoting <u>Collins</u>, 503 U.S. at 129, 112 S.Ct 1061)(internal citations omitted) The Court has "spoken of the cognizable level of executive abuse of power as that which shocks the conscience." <u>Id.</u>  In elaborating on "the constitutional concept of conscience shocking," the Court has "made it clear that the due process guarantee does not entail a body of constitutional law imposing liability whenever someone cloaked with state authority causes harm" <u>Id.</u> at 848, 112 S.Ct. 1061.  "[L]iability for negligently inflicted

-17-

harm is categorically beneath the threshold of constitutional due process." Id.

Consistent with these principles, courts applying both the "special relationship" exception to the DeShaney rule and the "state-created danger" exception to the DeShaney rule have generally required plaintiffs to demonstrate (or, at the motion-to-dismiss stage, to allege) that the defendant state official *at a minimum* acted with deliberate indifference toward the plaintiff. [citations omitted]

McClendon, 305 F.3d at 326.

To act with deliberate indifference, a state actor must "know[] of and disregard[] an excessive risk to [the victim's] health or safety." Ewolski v. City of Brunswick, 287 F.3d 492, 513 (6th Cir. 2002) (quoting Farmer v. Brennan, 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)) (internal quotations omitted). The state actor's actual knowledge is critical to the inquiry. A state actor's failure to alleviate "a significant risk that he should have perceived but did not," while "no cause for commendation," does not rise to the level of deliberate indifference. Farmer, 511 U.S. at 837, 114 S.Ct. 1970.

Id. at 326 & n.8.

Assuming without deciding that the plaintiff will be able to amend her complaint to allege the violation of a constitutional right, the individual defendants would nevertheless be entitled to dismissal of plaintiff's § 1983 claims unless plaintiff alleges facts capable of establishing that the actions or inactions of Lanier and Vaclavik of which she complains were undertaken with deliberate indifference to K.G.'s constitutional right to protection from harm caused by private actors. Although plaintiff alleges that the defendants "consciously disregarded their duty to follow the established policy against leaving such students in a

classroom unsupervised,"[11] and that "[t]his conduct constitutes deliberate indifference to Plaintiffs' rights,"[12] even if proven the facts alleged in plaintiff's complaint are insufficient to establish deliberate indifference on the part of either defendant.

### (A)  Lanier

Assuming without deciding that Lanier's decision to leave K.G. and two male students in his classroom unsupervised was a violation of school policy, the court nonetheless concludes that plaintiff's allegations are insufficient to state a claim against him because plaintiff fails to allege either that Lanier knew or believed that if he left the students unsupervised the two male students were likely to assault K.G. or that Lanier's violation of RISD's policy against leaving students unsupervised was made with the purpose or intention of causing injury to anyone, much less to K.G.  In other words plaintiff has not alleged any facts suggesting that Lanier's violation of RISD's policy of not leaving students unsupervised was anything other than ordinary negligence.  Even assuming that Lanier was aware that students' safety is potentially at risk when they are left unsupervised, there is no indication that Lanier was aware that the two male students in the classroom with K.G. had any ill intentions toward K.G., or that they had any history of assaultive

---

[11]Id. at p. 3 ¶ 11.

[12]Id.

conduct.   Thus,  while  Lanier's  action  in  leaving  the  students
unsupervised was certainly inadvisable, there are no allegations in
plaintiff's complaint suggesting that he knew of and disregarded an
excessive risk to K.G.'s health or safety.

(B)  Vaclavik

There  is  no  vicarious  or  <u>respondeat  superior</u>  liability  of
supervisors under § 1983.  <u>Rios v. City of Del Rio, Texas</u>, 444 F.3d
417, 425 (5th Cir. 2006) (citing <u>Thompkins v. Belt</u>, 828 F.2d 298,
303-304 (5th Cir. 1987).  "Rather, a plaintiff must show either the
supervisor personally was involved in the constitutional violation
or  that  .  .  .  [the]  supervisor's  deliberate  indifference  to
subordinate's wrongdoing 'caused a constitutional injury to the
[plaintiff].'"  <u>Id.</u> at 425-426 (quoting <u>Taylor ISD</u>, 15 F.3d at
454).  Since plaintiff has not alleged that Vaclavik was personally
involved  in  the  acts  that  caused  K.G.'s  injuries  or  that  his
deliberate  indifference  to  Lanier's  wrongdoing  caused  K.G.  to
suffer  a  constitutional  injury,  plaintiff's  allegations  are
insufficient to state a § 1983 claim against Vaclavik.

Plaintiff's complaint fails to state a claim against Vaclavik
for yet another separate and independent reason.  The Fifth Circuit
has frequently held that supervisor liability under § 1983 requires
a showing of the supervisor's "deliberate indifference to the known
or obvious fact that such constitutional violations would result"
and  "[t]hat  'generally  requires  that  a  plaintiff  demonstrate  at

least a pattern of similar violations.'" <u>Johnson v. Deep East Texas Regional Narcotics</u>, 379 F.3d 293, 309 (5th Cir. 2004). <u>See also Estate of Davis v. City of North Richland Hills</u>, 406 F.3d 375, 381 (5th Cir. 2005); <u>Burge v. St. Tammany Parish</u>, 336 F.3d 363, 370 (5th Cir. 2003); <u>Cousin v. Small</u>, 325 F.3d 627, 637 (5th Cir. 2003). Plaintiff's complaint contains no allegation of any prior incident in which Lanier or any other Royal Middle School teacher left students unsupervised, that any other Royal Middle School student sexually assaulted another student, or that K.G. was assaulted by another student much less by the two male students who are alleged to have perpetrated her injuries. Nor is any fact alleged that would tend to indicate that Vaclavik was aware of any such failure to supervise students, or that he otherwise had the deliberate indifference necessary for supervisory liability.

(b)   RISD

Local government liability under 42 U.S.C. § 1983 requires proof of (1) a policymaker, (2) an official policy, (3) and a violation of constitutional rights whose "moving force" is the policy or custom. <u>Rivera v. Houston Independent School District</u>, 349 F.3d 244, 247 (5th Cir. 2003) (citing <u>Piotrowski v. City of Houston</u>, 237 F.3d 567, 578 (5th Cir. 2001) (citing <u>Monell v. Dept. of Social Services of the City of New York</u>, 98 S.Ct. 2018, 2037 (1978)). The policymaker must have final policymaking authority. <u>Id.</u> (citing <u>City of St. Louis v. Praprotnik</u>, 108 S.Ct. 915, 926

-21-

(1988)).  Local government liability cannot be sustained under a
theory of respondeat superior.  Bd. of County Commissioners of
Bryan County v. Brown, 117 S.Ct. 1382, 1388 (1997).  "[T]he
unconstitutional conduct must be directly attributable to the
[local government] through some sort of official action or
imprimatur; isolated unconstitutional actions by [government]
employees will almost never trigger liability."  Piotrowski, 237
F.3d at 578.  Therefore, to sustain liability under § 1983 the
plaintiff must point to more than the actions of an HISD employee,
she must identify a policymaker with final policymaking authority
and a policy that is the "moving force" behind the alleged
constitutional violation.

Citing the section of the complaint dealing with the Title IX
violation, plaintiff argues that her allegations that "K.G. has
been harassed on multiple prior occasions at the school . . .
implies a policy at Royal ISD of allowing harassment to continue
against K.G. unabated for an extended period of time, and, as
Plaintiffs have alleged, to an extreme degree."[13]  Instead of
pointing to an annunciated RISD policy that was the moving force
behind K.G.'s injuries, plaintiff essentially alleges that RISD
established a custom of tolerating harassment such that it
constituted official policy and that this custom endangered K.G.
See Jett v. Dallas Independent School District, 109 S.Ct. 2702,

---

[13]Plaintiff's Opposition to Defendants' Motion to Dismiss,
Docket Entry No. 10, p. 10.

2722-2723 (1989) (equating custom and policy for purposes of sustaining liability under § 1983); <u>Johnson v. Moore</u>, 958 F.2d 92, 94 (5th Cir. 1992) (defining "official policy" as including "a persistent, widespread practice . . . which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents [government] policy"). "Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body had delegated policy-making authority." <u>Johnson</u>, 958 F.2d at 94. Even if plaintiff's allegations can be liberally construed to allege that a custom of tolerating harassment of K.G. existed at Royal Middle School, plaintiff has failed to allege that the individual defendants had actual or constructive knowledge that K.G. had suffered any harassment or that the official policy maker(s) for RISD had actual or constructive knowledge that a custom of tolerating such harassment existed at Royal Middle School. Because plaintiff fails to allege facts capable of establishing that an official custom or policy of RISD was the moving force behind any alleged violation of K.G.'s constitutional rights, the court concludes that the allegations in plaintiff's complaint are insufficient to state a § 1983 claim against RISD.

2.   <u>Title IX Claim</u>

Plaintiff concedes that she cannot state claims against the individual defendants under Title IX.[14]  Citing <u>Doe ex rel. Doe v. Dallas Independent School District</u>, 2002 WL 1592694, *6 (N.D. Tex. July 16, 2002), plaintiff argues that a single incident of severe sexual harassment may be sufficient to establish a violation of Title IX.  In <u>Doe</u> the court explained that

> funding recipients are properly held liable in damages only where they are deliberately indifferent to sexual harassment, of which they have actual knowledge, that is so severe, pervasive, and objectively offensive that it can be said to deprive the victims of access to the educational opportunities or benefits provided by the school. . . The term . . . *pervasive* is defined as "that becomes or tends to become diffused throughout every part of" [citations omitted] . . . Although, in theory, a single instance of sufficiently severe one-on-one peer harassment could be said to have such an effect . . . one single instance of a forced manual penetration of one's vagina seems to qualify as a "sufficiently severe one-on-one peer harassment."

<u>Id.</u>  Although plaintiff argues that their allegations are sufficient to give rise to Title IX liability, the court disagrees.

Plaintiff alleges that K.G. suffered a single incident of severe sexual harassment when she was assaulted by two students, and that K.G.

> had been subject to sexual harassment at Royal Middle School on multiple occasions in the past to an extreme degree.  Moreover, after this attack, the school did not make any effort to obtain medical treatment for [K.G.], and it was left to her mother, Dana Goad, to transport

---

[14]Plaintiff's Opposition to Defendants' Motion to Dismiss, Docket Entry No. 10, p. 14.

her to the hospital despite the fact that [K.G.] was in
pain and was bleeding.[15]

These allegations are insufficient to state a claim against RISD
because they attempt to allege that RISD is liable for its lack of
response to acts of sexual harassment but fail to describe the
prior acts of sexual harassment, fail to allege that RISD knew
about the prior acts of sexual harassment, and fail to allege facts
capable of establishing that RISD's response to the alleged sexual
assault was "clearly unreasonable in light of the known
circumstances."   See id.   In other words these allegations fail
to allege facts capable of establishing that RISD was deliberately
indifferent to known acts of sexual harassment and/or assault
perpetrated against K.G.

**B.    State Law Claims**

     Federal courts are courts of limited jurisdiction and
adjudicate claims arising from violations of federal law including
the United States Constitution, claims in which diversity of the
parties is present, and pendent state law claims over which the
court may exercise supplemental jurisdiction.   Plaintiff filed her
complaint in this court pursuant to the statute governing federal
question jurisdiction, 28 U.S.C. § 1331.[16]   Since the court has
concluded that the plaintiff's only federal claims are subject to

_____

     [15]Plaintiff's Original Complaint, Docket Entry No. 3, p. 4
¶ 15.

     [16]Id. at p. 2 ¶ 7.

dismissal, no federal question remains before the court.  Although this fact alone does not divest the court of jurisdiction, in Carnegie-Mellon Univ. v. Cohill, 108 S.Ct. 614, 619 n.7 (1988), the Supreme Court stated that "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims."  Moreover, the general rule in this circuit is to dismiss state law claims when the federal claims they supplement are dismissed.   Parker & Parsley Petroleum Co. v. Dresser Industries, 972 F.2d 580, 585 (5th Cir. 1992) (citing Wong v. Stripling, 881 F.2d 200, 204 (5th Cir. 1989)).   See United Mine Workers v. Gibbs, 86 S.Ct. 1130, 1139 (1966) (ordinarily, when the federal claims are dismissed before trial the pendent state claims should be dismissed as well).   The dismissal of the supplemental state law claims should expressly be without prejudice so that the plaintiff may refile her claims in the appropriate state court. Bass v. Parkwood Hosp., 180 F.3d 234, 246 (5th Cir. 1999).

Because the court has concluded that all of the federal claims asserted in this action are subject to dismissal and because this action is still at an early stage, the court declines to exercise supplemental jurisdiction over the plaintiff's remaining state law claims.  Accordingly, the court concludes that the plaintiff's

state law claims for negligence, gross negligence, and <u>respondeat
superior</u> are subject to dismissal without prejudice to refiling in
a state court of appropriate jurisdiction.

## IV.  <u>Conclusions</u>

For the reasons explained above, the court concludes that the
§ 1983 claims that plaintiff has asserted against all three
defendants named in this action are subject to dismissal because
even if all of plaintiff's allegations are established, plaintiff
would not be able to show that any right protected by the United
States Constitution or by Title IX has been violated.  Accordingly,
Defendants' Motion to Dismiss the claims that plaintiff has
asserted under § 1983 and Title IX is **GRANTED**.  Since, however, the
Supreme Court's opinion in <u>DeShaney</u>, the Fifth Circuit's opinion in
<u>Hillsboro</u>, and the district court's analysis in <u>Teague</u> all imply
that Texas's compulsory attendance laws, in conjunction with a
plaintiff's mental disability, may result in the creation of a
special relationship between RISD and the plaintiff, the court is
not persuaded that this action should be dismissed for failure to
allege the violation of a constitutionally protected right without
first providing plaintiff an opportunity to amend her complaint.
<u>See</u> <u>Conley</u>, 78 S.Ct. at 102 ("[A] complaint should not be dismissed
. . . unless it appears beyond doubt that the plaintiff can prove
no set of facts in support of his claim which would entitle him to
relief.").  Neither is the court persuaded that it appears beyond

doubt that plaintiff can prove no set of facts in support of her Title IX claim.   Accordingly, plaintiff will be afforded twenty (20) days in which to file an amended complaint.   Since the court has yet to conclude that plaintiff has alleged a viable federal cause of action, the court defers consideration of the defendants' motion to dismiss the plaintiff's remaining state law claims. Accordingly, Defendants' Motion to Dismiss (Docket Entry No. 7) is **GRANTED in part** and **DEFERRED in part**.   Plaintiff may file an amended complaint within twenty (20) days.

 **SIGNED** at Houston, Texas, on this the 16th day of June, 2006.

_____
SIM LAKE
UNITED STATES DISTRICT JUDGE